**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF:<br>REBECCA LYNNE ENGLE,<br>　　　Debtor.<br>―――――――――――――――――<br>REBECCA LYNNE ENGLE,<br>　　　Plaintiff,<br>vs.<br>QUANTA INDEMNITY COMPANY AS SUCCESSOR BY MERGER WITH QUANTA SPECIALTY LINES INSURANCE COMPANY,<br>　　　Defendant. | No.　CV 13-1780-TUC-CKJ<br>　　　BK 4:08-bk-06355-EWH<br>　　　Adv. 4:10-ap-1313-EWH<br><br>**ORDER** |

On November 14, 2013, United States Bankruptcy Judge Eileen W. Hollowell issued Proposed Findings of Fact and Conclusions of Law (Doc. 1) recommending the Second Motion for Judgment on the Pleadings (Doc. 77) be granted and the Second Complaint filed by Debtor Rebecca Lynne Engle ("Engle") be dismissed. Engle has filed an Objection (Doc. 9) and Defendant Quanta Indemnity Company as successor by merger with Quanta Specialty Lines Insurance Company ("Quanta") has filed a Response (Doc. 6).

*Standard of Review*

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), a district court may refer actions within its bankruptcy jurisdiction to the bankruptcy court of that district. A bankruptcy judge may hear a non-core proceeding that is "related to" a case under title 11 and submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1); *see also* Fed. R. Bankr.P. 9033(a).[1] The district court is generally required to make a de novo determination of those portions of the proposed findings of fact and conclusions of law as to which an objection is made. 28 U.S.C. § 157(c)(1). The district court "may accept, reject, or modify the proposed findings of fact or conclusions of law." Fed. R. Bankr.P. 9033(d).

*Choice of Law*

Engle objects to the bankruptcy court's statement that Engle relies solely on the fact that she was a resident of Nebraska at the time her claims arose for her assertion that New York should not apply. *See* Doc. 1, p. 12 of 19. Engle asserts, however, that the presence of the risk from the sale of hundreds of securities principally to residents in or near Lincoln, Nebraska, warrants a finding Nebraska law should apply because it was the principle location of the insured risk and Nebraska has a materially greater interest than does New York. Restatement (Second) of Conflicts of Laws, § 187(2) and § 193. A review of the briefs filed in the bankruptcy matter shows that Engle did not rely solely on the fact that she was a Nebraska resident at the time the claims arose in support of her argument. The Court rejects this statement made by the bankruptcy judge.

---

[1] In 4:11-CV-373-TUC-FRZ, the court denied the motion to withdraw the reference of an adversary proceeding determining *inter alia* that it appeared "the case is non-core as it is an action that 'does not depend on bankruptcy laws for [its] existence and that could proceed in another court.'" 4:11-CV-373-TUC-FRZ, Doc. 8, *citation omitted*.

1    Engle also disputes the bankruptcy judge's conclusion that New York law should
2 apply because it was the choice of law in the contract. Engle asserts that Capital Growth
3 Financial ("Capital Growth") (for which Engel was a registered representative) was not in
4 a strong bargaining position regarding the policy as determined by the bankruptcy judge.
5 Rather, Engle asserts it is unlikely there was any negotiation of the state law choice.
6 However, this Court agrees with the analysis of the bankruptcy court. Capital Growth
7 procured the policy not only for Engle and other Nebraska representatives, but for a number
8 of other representatives – including some in New York.

9    Further, as discussed by the bankruptcy court, Capital Growth was a multi-state
10 brokerage firm. Its bargaining position was greater than that of an individual; indeed the
11 policy was procured through a broker. By including a specific choice-of-law provision,
12 Capital and Quanta intended that New York law apply. New York law, as chosen by Capital
13 Growth and Quanta, is to be applied because Nebraska does not have a more significant
14 relationship to the transaction and the parties. *See* Restatement § 193. Moreover, as
15 discussed by the bankruptcy court, the policy in this case is similar to the group insurance
16 policies discussed in Restatement § 192, comment h. The Court adopts this portion of the
17 Proposed Findings of Fact and Conclusions of Law.

*Exhaustion of Policy Limits*

20    Engle objects to the bankruptcy judge's conclusion that it is undisputed that the policy
21 limits were exhausted in November 2008 when the Florida District Court approved the
22 Capital settlement agreement. Engle asserts there are numerous cases requiring companies
23 to appear and defend even though the policy limits have been deposited in Court. *See*, *e.g.*,
24 *Emcasco Ins. Co. v. Davis*, 753 F.Supp. 1458, 1460 (W.D. Ark. 1990)("The insurance carrier
25 and the insured did not agree that the insurance carrier could rid itself of the liabilities
26 assumed by it and contracted for by the insureds by the carrier filing a lawsuit in Federal
27 Court and dumping the policy limits in to the registry of that Court."); *Ohio Cas. Ins. Co. v.*

1  *Reed*, 2006 WL 2348957 (S.D. Ind. August 11, 2006) ("Although the Courts are split on the
2  issue, the majority view appears to be that tendering funds with the Court in an interpleader
3  action does not discharge an insureds defense obligations").

4  However, Quanta argues that the cases relied upon by Engle address policies that
5  provided coverage for defense costs in addition to policy limits.  The policy limits of the
6  policy at issue in this case were depleted by not only the amounts of settlements and
7  judgments, but also by the costs of defense.  *See e.g. Everest Indem. Ins. Co. v.*
8  *Aventine-Tramonti Homeowners Ass'n*, No. 2:09-cv-1672, 2012 WL 870289, *3 (D. Nev.
9  Mar. 14, 2012).

10  While the issue is not undisputed, as stated by the magistrate judge, this Court finds
11  the bankruptcy court correctly concluded the policy limits were exhausted in November 2008
12  when the Capital Settlement Agreement was approved by the Florida District Court.  Further,
13  the bankruptcy court addressed Engle's arguments as to whether Quanta was relieved of its
14  obligation to indemnify Engle.

16  *Notice of Claim*

17  Engle objects to the bankruptcy judge's finding that the policy notice requirements
18  are fatal to Engle's claims because Quanta's obligations under the policy were not triggered
19  until Engle gave written notice of her claim."  Engle asserts *U.S. Underwriters Ins. Co. v.*
20  *Kum Gang Inc.*, 443 F.Supp.2d 348, 360 (E.D. NY 2006), which was relied upon by the
21  bankruptcy judge, recognized that the notice provision is a condition precedent to coverage
22  "absent a valid excuse."  Engle asserts Quanta's full knowledge of the claims, the brokers,
23  the attorneys, the insureds and the carrier qualifies as a valid excuse.  In *Kum Gang*, the court
24  summarized the applicable law:

25  > Under New York law, an insurer's obligation to cover a loss is not triggered unless the
26  > named insured gives timely notice of the loss.  *Travelers Ins. Co. v. Volmar*
27  > *Construction Co., Inc.*, 300 A.D.2d 40, 42, 752 N.Y.S.2d 286 (1st Dep't 2002)
    > (hereinafter "*Volmar*").  This duty extends to "additional insureds" under any policy,
    > and notice by one insured will not be imputed as notice by another. (*Id*., at 44, 752

28  - 4 -

N.Y.S.2d 286). "Neither notice provided by another insured nor the insurer's actual knowledge of the claim satisfies the contractual obligation of an insured to give timely notice." *Roofing Consultants, Inc. v. Scottsdale Ins. Co.*, 273 A.D.2d 933, 709 N.Y.S.2d 782 (4th Dep't 2000) (citing *American Mfrs. Mut. Ins. Co. v. CMA Enters.*, 246 A.D.2d 373, 667 N.Y.S.2d 724 (1st Dep't 1998); *Heydt Contr. Corp. v. American Home Assur. Co.*, 146 A.D.2d 497, 499, 536 N.Y.S.2d 770 (1st Dep't 1989)). An insurer is not obligated to disclaim coverage until an additional insured himself provides notice of an accident or claim. (*Roofing Consultants*, 273 A.D.2d., at 934, 709 N.Y.S.2d 782). A notice provision in a policy is a condition precedent to coverage; absent a valid excuse, the failure to satisfy the notice requirement vitiates the policy. *Volmar*, 300 A.D.2d at 42, 752 N.Y.S.2d 286 (citing *Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (N.Y.Ct.App.1972)). Where there is no excuse or mitigating factor for not giving notice, the question of reasonable notice is a legal determination. (*Volmar*, 300 A.D.2d at 43, 752 N.Y.S.2d 286). The rationale behind this rule is to permit the insurer to protect itself through investigating the claim promptly. *American Trans. Ins. Co. v. Sartor*, 3 N.Y.3d 71, 75, 781 N.Y.S.2d 630, 814 N.E.2d 1189 (N.Y.Ct.App. 2004).

*Kum Gang*, 443 F.Supp.2d at 360. If this Court were to accept what Engle asserts is a valid excuse, such an excuse would, in effect, permit the exception to take over the rule. The Court accepts this portion of the Proposed Findings and Conclusions of Law.

Engle also objects to the bankruptcy judge's finding that the actions of other parties, such as Capital Growth, which gave Quanta notice of the actions did not satisfy Engle's obligation because that result is only reached if New York law is applied. Engle points out that under Nebraska Law, "failure to give timely notice is not a defense to an insurance claim unless there is evidence of collusion or it is shown that the insurer has been prejudiced in its handling of the claim." *Deprez v. Continental Western Ins. Co.*, 255 Neb. 381, 386, 584 N.W.2d 805, 809 (1998), as cited in *Steffensneier v. Lemars Mut. Ins. Co.*, 276 Neb. 86, 93, 752 N.W.2d 155, 161 (2008). Engle argues Quanta has not been prejudiced. However, this Court agrees with the bankruptcy court's conclusion that New York law applies. The Court adopts this portion of the Proposed Findings and Conclusions of Law.

*Written Notice of Retention Requirements of the Policy*

Engle objects, relying on Nebraska law, to the finding that her failure to give written notice that she had exhausted the retention requirement of the policy prohibits her from

- 5 -

proceeding in her claims against Quanta.[2] However, as Quanta's obligations under the policy were not triggered until a $150,000 retention was satisfied, to state a claim Engle was required to allege she incurred any covered defense expenses after the $150,000 retention was satisfied and before a settlement agreement was reached between Engle, Capital Growth, Bernice Bonebrake, and other defendants. Because Engle failed to allege facts regarding the satisfaction of the retention, Engle failed to state either a breach of contract claim or a bad faith claim upon which relief could be granted. The Court adopts this portion of the Proposed Findings of Fact and Conclusions of Law.

*Termination of Quanta's Obligations Under the Policy Based on the Interpleader of Funds*

Engle objects to the bankruptcy judge's conclusion that Quanta was relieved of any further obligations under the policy once the Capital settlement agreement was approved and the policy limits were exhausted. Rather, Engle asserts that while an insurance company can settle with some but not all of the claimants, its obligation to indemnify is not extinguished. *Emcasco*, *supra*, 753 F.Supp. at 1460; *Ohio Cas. Ins. Co.*, *supra*. This argument fails to recognize that the policy limit for the policy at issue included not only liability but also defense costs.

Engle also objects to the bankruptcy judge's conclusion that she had failed to demonstrate Quanta breached the contract by exhausting the policy limits without notice to her. Engle asserts she incurred substantial expense in defending the arbitration by Orton 17 months before the interpleader of the $970,000 net policy limits by Quanta. Engle asserts that, at the time she was defending the Orton action, Quanta had not lived up to its obligations under the contract to appear and defend. Quanta asserted it had refused to defend the Orton action on the grounds that Orton's claim fell outside of the policy period and was

---

[2] The policy provided Quanta's defense and indemnity obligations did not commence until an insured had paid damages and defense costs (i.e., a retention) of $150,000. If multiple insureds were involved in a claim, only a single retention applied.

- 6 -

not otherwise covered as an "Interrelated Wrongful Act."[3]

However, Quanta was not required to notify Engle before the policy limits were exhausted. Quanta's obligations under the policy terminated when the liability limits were exhausted. The Court adopts this portion of the Proposed Findings of Fact and Conclusions of Law.

*Bad Faith Claim*

Engle asserts that, by applying New York law, the bankruptcy judge erred in concluding Engel did not state a bad faith claim against Quanta. However, this Court agrees with the bankruptcy court's conclusion that New York law applies. The Court adopts this portion of the Proposed Findings and Conclusions of Law.

*Claim for Consequential Damages*

Engle asserts, because the bankruptcy judge erred in precluding the claims for breach of contract and bad faith, the damages claim should proceed. Because this Court has concluded Engle has failed to state a claim upon which relief can be granted, there is no basis for the damages claim to proceed.

Accordingly, IT IS ORDERED:

1. The Second Motion for Judgment on the Pleadings (Bankruptcy Case # 4:10-ap-01313-EWH, Doc. 77) is GRANTED.
2. Engle's Second Complaint in Bankruptcy Case # 4:10-ap-01313-EWH is DISMISSED.
3. This matter is referred back to the bankruptcy court for further proceedings.
4. The Clerk of Court shall serve the bankruptcy court with a copy of this Order.

---

[3]The policy covered claims made between August 9, 2005 and August 9, 2006.

- 7 -

5. The Clerk of Court shall close its file in this matter.

DATED this 26th day of June, 2014.

_____
Cindy K. Jorgenson
United States District Judge